UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL PATRICK GALA,

    Plaintiff,

v.                            Case No.:  2:23-cv-642-JES-KCD

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT & RECOMMENDATION

Plaintiff Michael Patrick Gala sues under 42 U.S.C. § 405(g) to challenge the Commissioner of Social Security's decision denying his application for supplemental security income. (*See* Doc. 1.)[1] For the reasons below, the Commissioner's decision should be affirmed.

## I. Background

Gala filed for disability benefits in 2021, claiming he could no longer work because of stress, anxiety, post-traumatic stress disorder ("PTSD"), mental illness, and voices in his head. (Tr. 200.)[2] His application was denied

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

[2] Citations to the administrative record are designated by "Tr." with a pin-cite if needed.

initially and again upon reconsideration. (Tr. 137-40, 143-44.) He then requested further review before an administrative law judge ("ALJ").

Following a hearing, the ALJ concluded that Gala had severe impairments of degenerative disc disease of the lumbar spine, chronic obstructive pulmonary diseases, obesity, bipolar disorder, cannabis abuse disorder, PTSD, anxiety, and depression. (Tr. 12.) Still, the ALJ found Gala had the residual functional capacity ("RFC") to perform sedentary work with certain mental restrictions:

> able to understand, remember, and carry out simple tasks while maintaining attention and concentration for 2 hours at a time before requiring a regular scheduled break; no fast-paced production; low stress work defined as only occasional decision-making and only occasional changes in the work setting; occasional interaction with coworkers and supervisors; and no interaction with the public

(Tr. 16.)[3]

After considering the RFC and other evidence, including testimony from a vocational expert, the ALJ concluded that Gala could perform jobs in the national economy. (Tr. 24.) Thus, Gala was not disabled as that term is defined

---

[3] An individual claiming disability benefits must prove that he is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

in this context. He then exhausted his administrative remedies, and this lawsuit timely followed. (Doc. 1.)

## II. Standard of Review

Review of the Commissioner's (and, by extension, the ALJ's) decision denying benefits is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a mere scintilla but less than a preponderance. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The Supreme Court recently explained that "whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

When determining whether the ALJ's decision is supported by substantial evidence, the court must view the record as a whole, considering evidence favorable and unfavorable to the Commissioner. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). But the court may not reweigh the evidence or substitute its judgment for that of the Commissioner. And even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence.

3

*Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Finally, "[u]nder a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports [his] position; [he] must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017).

### III. Analysis

Gala argues that the ALJ's decision is not supported by substantial evidence because it is based on three incorrect or inappropriate reasons for discounting his subjective complaints about mental symptoms and limitations: (1) his marijuana use, (2) his medication non-compliance, and (3) his activities of daily living. (Doc. 18.)

To start, the ALJ at least partially accepted Gala's subjective complaints, noting in the opinion that "he alleges an inability to work due to anxiety, social difficulties, difficulties paying attention, memory deficits, difficulties following instructions, an inability to manage finances, back pain, and shortness of breath." (Tr. 17, 20.) But the "sum of the evidence supports a finding that the claimants mental health impairments are severe and cause functional limitations, but not to the extent alleged." (Tr. 21.) Thus, the ALJ found that the evidence supported limiting Gala to a reduced range of work with a variety of mental limitations. (Tr. 16, 21, 23.) The ALJ only rejected Gala's contention that he was more limited than the RFC.

The Eleventh Circuit recently reiterated the standard used to evaluate this argument:

> A claimant may establish that he has "a disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). In such a case, the claimant must show evidence of an underlying medical condition and either "objective medical evidence that confirms the severity of the alleged pain arising from that condition" or "that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Once a claimant has made this showing, the Commissioner "must then evaluate the intensity and persistence of [the claimant's] symptoms" in light of "all available evidence," including the claimant's testimony. 20 C.F.R. § 404.1529(c)(1). The Commissioner "will not reject" a claimant's statements "solely because the available objective medical evidence does not substantiate" the statements. *Id.* § 404.1529(c)(2). Instead, the ALJ considers several "[o]ther factors concerning [the claimant's] functional limitations and restrictions due to pain and other symptoms." *Id.* § 404.1529(c)(3)(i)-(vii).
>
> If a claimant provides subjective testimony on the severity of his symptoms, as [the claimant] did here, the ALJ "must articulate explicit and adequate reasons" for rejecting the complaints. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). The ALJ's "credibility determination does not need to cite particular phrases or formulations[,] but it cannot merely be a broad rejection" that fails to consider a claimant's "medical condition as a whole." *Dyer*, 395 F.3d at 1210-11 (cleaned up). We will not disturb "[a] clearly articulated credibility finding with substantial supporting evidence in the record." *Foote*, 67 F.3d at 1562.

*Taylor v. Comm'r of Soc. Sec.*, No. 21-12804, 2022 WL 1634086, at *5-6 (11th Cir. May 24, 2022).

Here, the ALJ repeated this formula, followed it, and cited to evidence to

support his findings. (Tr. 16-17.) He noted Gala has "medically determinable impairments [that] could reasonably be expected to cause some of the alleged symptoms." (Tr. 17.) Then, the ALJ considered "the treatment history or medical findings" to evaluate the "intensity, persistence, and limiting effects of these symptoms." (Tr. 17-21.) Ultimately, he concluded Gala's statements about these symptoms conflict with the evidence. (*Id.*) Thus, the question is whether the ALJ's explanation for this credibility finding is "clearly articulated … with substantial supporting evidence in the record." *Foote*, 67 F.3d at 1562.

The Court is satisfied the ALJ provided substantial evidence to support the assessment of Gala's subjective symptoms. Among other things, the ALJ observed that while the treatment records documented complaints of irritability, anger, and hallucinations, as well as abnormal mental status findings, mental status examinations have also shown fair insight and judgment; coherent, logical, and goal-directed thought; appropriate mood; and normal attention and concentration. (Tr. 17-20, 540-42, 545-48, 550-53, 555-58, 560-66, 576-86, 587-92, 598-603, 608-13, 619-24.) The ALJ found that the sum of the evidence supports a finding that Gala's mental health impairments are severe and cause functional limitations, for which the ALJ accounted in his RFC assessment, but the objective evidence did not support the extent of limitations he alleged. (Tr. 20.) It is not for the Court to reweigh the evidence in hopes of reaching a different conclusion.

The Court now turns to the three specific arguments Gala raises concerning the ALJ's credibility assessment.

**A. Marijuana Use**

Gala argues the ALJ failed to explain the relevance of his marijuana use in assessing his subjective complaints. (Doc. 18 at 10.) Gala asserts that "the ALJ appears to note Plaintiff's marijuana usage in an attempt to undermine [his] character, as no other reason is given for its mention" and the ALJ "failed to explain the relevance of Plaintiff's marijuana usage as he makes no claim, nor is the evidence support, that Plaintiff's marijuana usage impacted his mental functioning." (*Id.* at 10, 11.) In other words, the ALJ failed to create a "logical bridge" from the evidence to its impact on the ALJ's decision. (*Id.*)

At the hearing, Gala testified that when he could not afford medication, he would use marijuana to mask his symptoms. (Tr. 46.) When the ALJ questioned how he could afford the marijuana, Gala said his friends gave it to him. (Tr. 48.) The ALJ clarified why he asked about marijuana use: "I wasn't inquiring into any issues with respect to credibility or not. It was only to the fact of functioning, you know, while using marijuana, whether that contributes to his, you know, difficulty with the spirometry," and "with respect to, you know, affording marijuana versus, you know, not being able to afford medication." (Tr. 60-61.) Gala's marijuana use was mentioned throughout the ALJ's decision. (*See, e.g.*, Tr. 14 ("he obtains marijuana from his friends"); Tr.

7

14, 15, 17, 20 ("the claimant uses marijuana against medical advice"; "the claimant self-treats with marijuana"); Tr. 19 ("poor compliance with medication and used marijuana regularly")). In essence, Gala argues that the ALJ's consideration of his marijuana use was done to attack his character, not to assess his functioning.

A logical bridge simply means that "an ALJ must articulate at some minimum level, her analysis of the evidence." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Ultimately, this requirement does not alter the substantial evidence standard. *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021). As mentioned, the ALJ provided substantial evidence to support the assessment of Gala's subjective symptoms.

Gala's logical bridge argument fails anyhow. At the hearing, the ALJ stated that he asked about the marijuana use to determine whether it affected Gala's lung function (Tr. 46), and how he affords the drug (Tr. 48). The ALJ likely mentions marijuana use in the decision because marijuana abuse is referenced throughout the medical records. *See, e.g.*, Tr. 100, 106, 113, 256, 276. Further, because the ALJ found that one of Gala's severe impairments was "cannabis abuse disorder," as it had been diagnosed by the consultative examiner, (Tr. 12, 17, 296), he had to consider the effects of marijuana abuse combined with all other impairments in determining whether Gala could work. *See Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 902-03 (11th Cir. 2011)

("The ALJ must make specific and well-articulated findings as to the effect of the combination of all of the claimant's impairments."). At bottom, contrary to Gala's assertion, marijuana use wasn't thrown in the decision to undermine his character. It was necessary to the ALJ's analysis.

### B. Activities of Daily Living

Gala next argues that the daily activities the ALJ identified as inconsistent with his subjective complaints do little to show his ability to function in a work environment. (Doc. 18 at 14.) In support, Gala relies on *Simon v. Comm'r of Soc. Sec. Admin.*, 7 F.4th 1094, 1108 (11th Cir. 2021), in which the court stated, "In our view, it goes almost without saying that many people living with severe mental illness are still capable of eating, putting on clothes in the morning, and purchasing basic necessities. None of those activities, however, say much about whether a person can function in a work environment—with all of its pressures and obligations—on a sustained basis." *Id.*

In making this argument, however, Gala trivializes the extent of his activities. He does far more than eat, put on clothes, and buy basic necessities. The ALJ's analysis reveals the expansive number of tasks that fall within Gala's reported "daily activities": he receives food from a soup kitchen, he drives and goes out alone, he goes shopping, he socializes and obtains marijuana from his friends, he prepares simple meals, manages his finances,

9

he can perform some household chores, and he tends to his personal care needs. (Tr. 20-21, 48, 113, 214-19.) The ALJ found that Gala's ability to obtain food from food kitchens, socialize with friends, shop, drive, and go out alone were inconsistent with his reports of social functioning deficits, hallucinations, and anger problems (Tr. 21.) Although not dispositive, a claimant's activities may show that his symptoms are not as limiting as alleged. *See* 20 C.F.R. § 416.929(c)(3)(i); SSR 16-3p; *Dyer*, 395 F.3d at 1210, *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987), *Stacy v. Comm'r, Soc. Sec. Admin.*, 654 F. App'x 1005, 1011 (11th Cir. 2016).

The ALJ did not unduly rely on Gala's activities in deciding his claim, nor did the ALJ find his activities to be dispositive evidence of his ability to work. The ALJ properly considered Gala's activities together with the other evidence in accordance with the regulations and Eleventh Circuit case law. The record as a whole provides substantial evidence to support the ALJ's finding that Gala's subjective statements about his symptoms and limitations were inconsistent with the medical and other evidence. Thus, there is no basis to remand on this issue.

### C. Medication Noncompliance

Finally, Gala argues the ALJ erred in relying on his noncompliance with medication as a "significant basis" for rejecting his subjective complaints because he testified that he could not afford his medications. (Doc. 18 at 10.)

The Commissioner responds that the ALJ properly considered Gala's treatment history. (Doc. 20 at 10.)

An "ALJ may not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanations that might explain the failure to seek or pursue treatment." *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012). An ALJ must consider evidence showing a claimant cannot afford medical care before denying benefits based on non-compliance with care. *Id.* (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003)). When an ALJ relies on noncompliance with prescribed medical treatment as the "sole ground for the denial of disability benefits," and the record contains evidence that the claimant could not afford the prescribed medical treatment, then the ALJ must determine whether the claimant could afford the prescribed medical treatment. *Ellison*, 355 F.3d at 1275. If a court determines the failure to follow prescribed medical treatment is not one of the "principal factors in the ALJ's decision," then the ALJ is not required to delve into a claimant's ability to pay, and this failure is not reversible error. *Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 817 (11th Cir. 2011).

Gala does not point to any reference by the ALJ that he denied benefits based on Gala's noncompliance with a prescribed medical treatment, let alone that non-compliance with a prescribed medical treatment was the "significant

11

basis" for the denial of benefits. Thus, the ALJ was not required to delve into Gala's ability to pay.

But even if the ALJ erred in considering Gala's noncompliance, any error was harmless. Aside from noncompliance, there was ample evidence to support the ALJ's RFC determination. *See Ricks v. Astrue*, 3:10-cv-975-TEM, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (for the RFC assessment to be supported by substantial evidence, it must only be shown that the ALJ has "provide[d] a sufficient rationale to link" substantial record evidence "to the legal conclusions reached.") As for the mental limitations, the ALJ considered mental status examinations that showed fair insight and judgment; coherent, logical, and goal-directed thought; appropriate mood; and normal attention and concentration. (Tr. 17-20, 540-42, 545-48, 550-53, 555-58, 560-66, 576-86, 587-92, 598-603, 608-13, 619-24.) The ALJ also considered Gala's testimony, his activities of daily living, and a state-agency-psychological-consultant Paula Bowman's opinion that Gala suffered from PTSD and head injuries. (Tr. 22, 296.) Dr. Bowman further opined that Gala had only mild to moderate limitations in: understanding, remembering or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Tr. 22, 269.)

Gala spends much of his brief laboring to show that the medical evidence reflects his subjective complaints. (Doc. 18 at 4-7.) But these arguments

essentially ask the Court to reweigh the evidence, which is not allowed. "Resolution of conflicts in the evidence, including conflicting medical opinions and determinations of credibility are not for the courts; such functions are solely within the province of the Secretary." *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973).

While a different factfinder may well have credited Gala's reported limitations and built them into the RFC, that is not the test. The dispositive question here is whether there is "such relevant evidence as a reasonable mind might accept as adequate" to support the ALJ's conclusion. *Biestek*, 139 S. Ct. at 1154. "The substantial evidence threshold is not high and defers to the presiding ALJ, who heard testimony and reviewed the medical evidence." *Rodriguez v. Berryhill*, 836 F. App'x 797, 803 (11th Cir. 2020). Given this low bar, the Court should affirm.

### IV. Conclusion

Considering the record as a whole, substantial evidence supports the ALJ's findings and Gala has failed to show error. Accordingly, it is **RECOMMENDED** that the Commissioner be **AFFIRMED** and judgment be entered against Gala.

**Recommended** in Fort Myers, Florida on April 3, 2024.

Kyle C. Dudek
United States Magistrate Judge

13

Copies:   All Parties of Record

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. To expedite resolution, parties may file a joint notice waiving the 14-day objection period.